STATE OF NORTH CAROLINA v. JENKIE H. BUNN

No. 7314SC515

(Filed 10 October 1973)

APPEAL by defendant from Copeland, Judge, at the 11 December 1972 Session of Superior Court held in DURHAM County.

Defendant was charged in a bill of indictment with first degree murder, to which he pleaded not guilty. At the start of the trial, the Solicitor announced that the State would seek a verdict of murder in the second degree or any lesser included offense that the jury might find.

The State presented evidence which tended to show the following: In January 1971, Ruth Hood, 37, was confined to John Umstead Hospital in Butner, N. C. On 19 January 1971, Mrs. Hood went on a bus trip with a group from John Umstead Hospital to visit a museum in Raleigh. At the museum she walked off from the group, took a cab to a cafe in Raleigh, had a couple of beers at the cafe, waited until it turned dark outside, and then took a bus to Durham. In Durham, Mrs. Hood met deceased, James Edward Waddell, at a grocery store. She had not previously known deceased, but at this time

she accompanied him to several places where they drank alcoholic beverages. Mrs. Hood asked deceased if he knew anyone she could stay with until morning when she could wire home for transportation money. Deceased told Mrs. Hood she could stay with his sister.

Deceased then took Mrs. Hood to a house that she believed was deceased's sister's dwelling. There was no lock on the door of the house and deceased only had to push the door to gain entrance. The house was, in fact, an old vacant house without heat or lights. Deceased took Mrs. Hood to a room on the second floor which contained a bed and some other furniture. Mrs. Hood tried to leave this room several times saying she didn't feel right being there, but each time deceased stopped her. Deceased mentioned "something about me going to bed with him." Mrs. Hood took her coat off, although it was freezing that night in the unheated room, so that she wouldn't be cold when she got outside. She did not know whether or not deceased built a fire in the house.

While the two were seated on the bed in that room, the door burst open and defendant came into the room saying "Get up, get up, get out, get out." Defendant had a rifle with a 16-inch army surplus bayonet on its end. He pointed the rifle at deceased and Mrs. Hood. Defendant did not give deceased time to put his coat or shoes on, but marched the two immediately down the stairs. Defendant "prodded" Mrs. Hood with the bayonet as she walked down the stairs. He marched the two outside to a pickup truck. At this time, Mrs. Hood noticed that defendant's face was scratched. Defendant forced deceased and Mrs. Hood into the truck, prodding Mrs. Hood with the bayonet as she tried to climb into the truck and once sticking her in the hip with the bayonet. Defendant placed a chain over the laps of deceased and Mrs. Hood, who were seated in the bed of the truck, but did not fasten it.

Defendant then drove away the truck. When defendant stopped for a red light, deceased jumped over the side of the truck and started running. Defendant got out of the cab of the truck and shot deceased from a distance of about 50 feet. After he shot deceased, defendant got back in the truck and drove to the police station where he turned Mrs. Hood over to the police. Mrs. Hood did not see deceased hit defendant, did not see any scuffle between the two, and heard but did not see the shot when it was fired.

Defendant told investigating officer that he had made a citizen's arrest of deceased and Mrs. Hood for trespassing; that he had found the two in a building belonging to his father on the corner of Elizabeth and Ramseur Streets in Durham; that they had had trouble in the past with drunks and people sleeping in the building; that when deceased jumped out of his truck, defendant had called to him and chased him; that at this time deceased attacked him; that during the struggle, defendant pulled a .25 caliber pistol, shot deceased, and then continued to the police station. Defendant admitted to the police prodding Mrs. Hood with the bayonet. Defendant had been drinking.

Deceased died of a single gun shot wound (.22 to .35 caliber) in the chest shortly after the police got to him. Deceased had a long criminal record mostly including public drunkenness, housebreaking and larceny.

Defendant presented evidence which tended to show the following: that defendant's father owned the building in which deceased and Mrs. Hood were found, and that there had been trouble in the past with people breaking into the building; that on the night of 19 January 1971 defendant drove past this building and observed a "flash of fire" from within it; that defendant stopped his truck, got a .25 caliber automatic pistol and a bayonet from the cab of the truck, and investigated; that he found deceased and Mrs. Hood in a room on the second story of the building; that he made a citizen's arrest for trespassing; that he didn't let the two get their coats because it was dark and he couldn't see them clearly; that when defendant placed the two in the truck, he had to nudge Mrs. Hood with the bayonet to get her in the truck; that when deceased jumped out of the truck and ran, defendant tackled him and a struggle ensued; that during the scuffle, deceased called defendant a "g..d... s.o.b.," and said he was going to kill defendant; that deceased hit defendant hard in the face causing defendant to "see stars" and become "more or less blind"; that as defendant was blinded and staggering back, deceased tried to get defendant's pistol that was tucked in defendant's belt; that defendant pulled the pistol and shot deceased; that he shot deceased to save his own life; that defendant then took Mrs. Hood to the police station, turned her in for trespassing, and reported the shooting; that defendant had not been drinking that night; and that defendant had a good general character and reputation in the community.

State v. Morris

A jury found defendant guilty of second degree murder. From the verdict and a judgment imposing an active prison sentence, defendant appealed.

*Attorney General Morgan, by Assistant Attorney General Magner, for the State.*

*Norman E. Williams, Thomas F. Loflin III, and Thomas B. Anderson, Jr., for defendant.*

BROCK, Chief Judge.

We have carefully considered each of defendant's assignments of error and conclude that they present no prejudicial error. It seems clear to us from a reading of the evidence and the charge of the trial judge that defendant was granted a full and fair trial. In our opinion the errors complained of by defendant were not prejudicial and did not affect the results of the trial. A new trial will not be ordered for nonprejudicial error.

No error.

Judges HEDRICK and VAUGHN concur.